# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

Jay Bernard Gillilland,

        Petitioner,

vs.

Wendy J. Roal, et al.,

        Respondents.

CV11-0517-TUC-FRZ (JM)

**REPORT AND RECOMMENDATION**

Pending before the Court is Jay Bernard Gillilland's Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254. In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

. . . .

I. **FACTUAL AND PROCEDURAL BACKGROUND**

After a jury trial, Gillilland was convicted of approximately three hundred offenses including sexual conduct with a minor, child molestation, sexual exploitation of a child, and child abuse. *Answer*, Ex. E, pp. 1-2. "He was sentenced to numerous consecutive life sentences, with possibility of parole after serving thirty-five years on each sentence, as well as to a combination of concurrent and consecutive shorter sentences." *Id*., p. 2. On appeal, Gillilland argued that two search warrants were not valid and that the trial court therefore should have suppressed videos found during the searches. *Id*., p. 3. He also argued that the trial courted erred in denying his motion to dismiss what he claimed were "multiplicitous counts" in the indictment. *Id*., p. 24.

In its Memorandum Decision affirming Gillilland's convictions and sentences, the Arizona Court of Appeals summarized the factual background as follows:

> Gillilland was employed as a customs inspector at a U.S./Mexico border crossing. Federal authorities began investigating him on suspicion that he was smuggling narcotics across the border. On July 20, 2004, a United States magistrate issued a warrant to search Gillilland's home for evidence of possession and distribution of controlled substances. During the search, the agents seized a computer and some data storage discs and took them to their office. Upon opening one of the discs, an investigating agent immediately saw what appeared to be child pornography. The agent halted his examination and subsequently obtained a warrant on July 23, 2004, to search the items they had already seized for further evidence of child pornography. During the search of those items, the agent discovered pornographic pictures involving Gillilland's minor daughter. The agent showed this evidence to the Santa Cruz County Sheriff's Department.
>
> Meanwhile, federal agents had also obtained a warrant on July 21 to search a storage unit leased by Gillilland for further evidence of

1  drug trafficking. During that search, the agents observed a box of
2  sexual instruments, video cassettes, and compact discs, including one with a label indicating it contained photographs. The agents also
3  shared this information with the Santa Cruz County Sheriff's Department. The sheriff's department began its own investigation and
4  obtained a warrant on July 30 from the state superior court authorizing another search of the storage unit. This search yielded videos depicting
5  Gillilland performing multiple sexual acts with his daughter within a two-year period of time. Gillilland's daughter was between five and
6  seven years old during the incidents depicted. These videos comprised the primary evidence of guilt the state presented at trial.

7  *Answer*, Ex. E, pp. 2-3.

8  The Arizona Supreme Court denied Gillilland's petition for review, *Answer*,
9  Ex. G, and the United States Supreme Court denied certiorari, *id*., Ex. H. Gillilland
10  did not file a Petition for Post-Conviction Relief under Rule 32, Arizona Rules of
11  Criminal Procedure.

12  In the petition before the Court, Gillilland raises one ground for relief. He
13  urges the Court to find that *Stone v. Powell*, 428 U.S. 465 (1976), does not bar review
14  of his Fourth Amendment claims because he was not afforded "full and fair"
15  consideration by the state courts. *Petition*, p. 6. Further, he argues that if his Fourth
16  Amendment claims are reviewed under the standards of 28 U.S.C. § 2254, he is
17  entitled to relief. *Memorandum*, p. 1. Although not raised as a separate ground for
18  relief, Gillilland also contends that he received ineffective assistance of post-
19  conviction relief counsel. As explained below, none of Gillilland's claims merits
20  relief.

21  . . . .

22  . . . .

II.     **LEGAL DISCUSSION**

    A.     **AEDPA Standards**

Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120 S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result.  *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000).  In determining whether a state court decision is contrary to federal law, the court must examine the last reasoned decision of a state court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101 (9th Cir. 2002).  A state court's decision can be an unreasonable application of federal law either (1) if it correctly identifies the governing legal principle but applies it to a new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

. . . .

. . . .

4

**B.**     *Stone v. Powell*

As Gillilland recognizes, the primary obstacle to having his Fourth Amendment claim considered by the Court is the rule found in *Stone v. Powell,* 428 U.S. 465 (1976). *Stone* held that when the State has given a petitioner a full and fair chance to litigate a Fourth Amendment claim, federal habeas review is not available to a state prisoner claiming that his conviction was based on evidence obtained through an unconstitutional search and seizure. *Withrow v. Williams*, 507 U.S. 680, 682-83 (1993).

Gillilland asserts that he did not benefit from an "opportunity for full and fair litigation" of his Fourth Amendment claim in the state court. He then proceeds, however, for 25 pages to explain how the trial and appeals court addressed his claim, but applied the incorrect standards and made incorrect factual findings. *Memorandum*, pp. 6-32. In doing so, he misapprehends the standards applicable to his claim. "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir.1996). Thus, a "court's mistaken recitation of the facts, even assuming *arguendo* that it resulted in an incorrect decision, is not enough in and of itself to establish that [a petitioner's] claims were not fully and fairly considered." *Mack v. Cupp*, 564 F.2d 898, 902 (9th Cir.1977). Gillilland's Fourth Amendment argument fails under these standards.

The record reflects that Gillilland not only had the opportunity to fully litigate his search and seizure claims, but that he actually did. On February 6, 2007, the trial

1  court conducted a hearing on Gillilland's motion to suppress. *Answer*, Ex. A. The
2  transcript reflects that Gillilland submitted to the trial court a transcript of an
3  interview of John Anderson and presented the live testimony of two witnesses, Scott
4  Mulay and Cecilia Cene. *Id*., pp. 17-18, 91. The hearing ran several hours and the
5  transcript of the testimonial portion of the hearing covers approximately 100 pages.
6  *Id*. pp. 17-116. In arguing the motion, Gillilland's counsel notes that the written
7  motion was approximately 50 pages long, *id*. pp. 119-20. The argument of
8  Gillilland's counsel and the government consumes another 37 transcript pages. *Id.*,
9  pp. 120-157. There is no indication in the transcript, or elsewhere in the record, that
10 the trial court put any limitations on Gillilland's ability to litigate the claim.

11     Also relevant to the evaluation of whether a petitioner was provided a full and
12 fair opportunity for litigation of a Fourth Amendment claim is the extent to which the
13 claim was considered by the state appellate court. *Terrovona v. Kincheloe*, 912 F.2d
14 1176, 1178-79 (9th Cir.1990); *Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir.1981).
15 Here, Gillilland's Fourth Amendment claims received extensive consideration by the
16 Arizona Court of Appeals. The discussion of the claim covers 21 pages of the Court
17 of Appeals' Memorandum Decision and cites to numerous state and federal cases and
18 contains extensive discussion of the application of that authority to the claims raised
19 by Gillilland. *Answer*, Ex. E, pp. 3-24.

20     Thus, the record is clear that Gillilland received and took advantage of the full
21 and fair opportunity to litigate in the state courts the Fourth Amendment claims now
22 before the Court. The claims are therefore barred by the holding in *Stone* and are not

6

cognizable on federal habeas review. *Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir.1990) ("Given that [the petitioner] had an opportunity in state court for 'full and fair litigation' of his fourth amendment claim, the Constitution does not require the [the petitioner] be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

### C.   Ineffective Assistance of Counsel

In this sub-claim, Gillilland appears to be arguing that he was not made aware of his right to pursue post-conviction relief under Rule 32 of the Arizona Rules of Criminal Procedure and, therefore, he was "denied a 'full and fair opportunity' to litigate his constitutional claims before the state courts." *Memorandum*, p. 36. Thus, according to his argument, *Stone* does not apply. *Id*. There are a number of shortcomings to this argument.

The only substantive claim Gillilland references in relation to his ineffective assistance claim is the Fourth Amendment claim discussed above. Other than that argument, Gillilland merely alleges that "counsel did nothing to pursue state postconviction remedies at all." *Memorandum*, p. 34. Gillilland's argues that his counsel's ineffective assistance allows him to overcome the "procedural bar" of *Stone v. Powell,* 428 U.S. 465 (1976). He does not, however, explain how couching this claim as one for ineffective assistance would operate to affect the rejection of the stand-alone Fourth Amendment claim rejected by the Court of Appeals on direct appeal.

Moreover, this is not a case where Gillilland is seeking to overcome a procedural default which has prevented him from pursuing his claims in federal court. *Cf. Martinez v. Ryan*, ––– U.S. ––––, 132 S.Ct. 1309 (2012) (ineffective assistance of counsel at initial-review collateral proceeding on a claim of ineffective assistance of trial counsel established cause for a prisoner's procedural default of same claim in a federal habeas proceeding); *Maples v. Thomas*, ––– U.S. ––––, 132 S.Ct. 912 (2012) (cause for the petitioner's state procedural default of failing to file a timely appeal in state court shown where petitioner was abandoned by counsel during post-conviction proceedings and lacked notice that he needed to protect himself by proceeding pro se). Gillilland raised his claims before the trial court, the Arizona Court of Appeals, the Arizona Supreme Court, and the United States Supreme Court. *Answer*, Exs. A (trial court transcript), E (Court of Appeals Memorandum Decision), G (Mandate reflecting Arizona Supreme Court denial of petition for review), H (denial of petition for certiorari by United States Supreme Court). Thus, Gillilland did not procedurally default his Fourth Amendment claims and any deficiency in representation in post-conviction proceedings cannot be said to have resulted in this Court's inability to address them due to the United States Supreme Court's holding in *Stone v. Powell,* 428 U.S. 465 (1976).

Finally, even if Gillilland's claims were cognizable, under *Strickland v. Washington*, 466 U.S. 668, 687 (1994), he is required to prove is trial attorney's performance was both "deficient" and "prejudicial" to his defense. Under these circumstances, Gillilland has shown neither ineffective assistance, as he has not

described a claim that was lost because it was not raised in PCR proceedings, nor prejudice resulting from any alleged deficiency. *Id*.

### III. **RECOMMENDATION**

Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District Court, after its independent review, **deny** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 11-517-TUC-FRZ**. Failure to timely

. . . .

. . . .

. . . .

. . . .

file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).

Dated this 5th day of July, 2012.

/s/ Jacqueline Marshall
Jacqueline Marshall
United States Magistrate Judge